13-2886-cv
McIntyre v. Colvin

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2014

(Argued: May 22, 2014    Decided: July 7, 2014)

Docket No. 13-2886

- - - - - - - - - - - - - - - - - - -x

WANDA GONZALEZ MCINTYRE,

Plaintiff-Appellant,

- v.-

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

- - - - - - - - - - - - - - - - - - -x

Before:        JON O. NEWMAN, DENNIS JACOBS, and JOSÉ A.
               CABRANES, Circuit Judges.

Wanda Gonzalez McIntyre appeals from a judgment of the United States

District Court for the Northern District of New York (Suddaby, J.),affirming the

Administrative Law Judge's ("ALJ") denial of her application, pursuant to Title II of the Social Security Act (the "SSA"), 42 U.S.C. §§ 401 et seq., for disability insurance benefits and supplemental security income. The district court granted the motion of defendant Commissioner of Social Security (the "Commissioner") for judgment on the pleadings, finding that the ALJ's denial of benefits, on the ground that McIntyre was not disabled within the meaning of the SSA, was supported by substantial evidence.

McIntyre argues (inter alia) that the ALJ erred in relying on the vocational expert's testimony to conclude that there were significant numbers of jobs in the national economy that McIntyre could perform, because the ALJ failed to explicitly include McIntyre's non-exertional (i.e., non-physical) limitations in his "residual functional capacity" finding and thus posed an incomplete hypothetical question to the vocational expert. Although the ALJ erred, the error was harmless because the hypothetical question posed to the vocational expert implicitly (and sufficiently) accounted for McIntrye's particular non-exertional limitations. We affirm.

JAYA SHURTLIFF, Law Office of Jaya Shurtliff, Syracuse, NY, for Appellant.

JOSHUA L. KERSHNER, Special United States Attorney (<u>with</u> Stephen P. Conte, Of Counsel, Office of the General Counsel, Social Security Administration, <u>on the brief</u>), <u>for Appellee</u>.

DENNIS JACOBS, <u>Circuit Judge</u>:

Wanda Gonzalez McIntyre appeals from a judgment of the United States District Court for the Northern District of New York (Suddaby, <u>J.</u>), affirming the Administrative Law Judge's ("ALJ") denial of her application, pursuant to Title II of the Social Security Act (the "SSA"), 42 U.S.C. §§ 401 <u>et seq.</u>, for disability insurance benefits and supplemental security income. The district court granted the motion of defendant Commissioner of Social Security (the "Commissioner") for judgment on the pleadings, finding that the ALJ's denial of benefits, on the ground that McIntyre was not disabled within the meaning of the SSA, was supported by substantial evidence.

McIntyre argues (<u>inter alia</u>) that the ALJ failed to explicitly include McIntyre's non-exertional (<u>i.e.</u>, non-physical) limitations in his "residual functional capacity" finding, posed a hypothetical question to the vocational expert that was incomplete in that way, and then improperly relied on the vocational expert's testimony to conclude that there were significant numbers of

3

jobs in the national economy that McIntyre could perform. McIntyre argues that these errors demonstrate that the ALJ's denial of benefits was not based on proper legal standards and was not supported by substantial evidence. Although the ALJ erred in posing an incomplete hypothetical question, we apply harmless error analysis and conclude that the error was harmless because the hypothetical question posed to the vocational expert implicitly (and sufficiently) accounted for McIntrye's particular non-exertional limitations.

**BACKGROUND**

McIntyre, who completed education through the tenth grade, has engaged in secretarial work, telemarketing, retail work, home health care work, and, most recently, technical support work. She was 38 years old when she filed for disability benefits and supplemental social security income on December 17, 2008, alleging disability beginning that November 28. The Commissioner denied her application, and McIntyre filed a written request for a hearing, which was held on June 4, 2010, and at which McIntyre appeared pro se and testified.

McIntyre's alleged disability, stemming from a work injury she sustained in 2004, consists of a back disorder (i.e., a small disc protrusion without

4

herniation, along with lower abdominal / pelvic pain) and depression caused by chronic pain. McIntyre continued to work until November 28, 2008; since then, she has no record of employment.

The ALJ denied McIntyre's claim on July 16, 2010, employing the five-step evaluation process set out in 20 C.F.R. § 404.1520(a)(4). The ALJ found that McIntyre was not engaged in substantial gainful activity (Step One), and that she suffered from severe impairments, as defined in the Act, consisting of "disorders of the back and affective disorder" (Step Two). Since the impairments did not meet or medically equal the specified criteria of any listed impairment in 20 C.F.R. § 404, Subpart P, Appendix 1 (Step Three), the ALJ proceeded to decide (at Step Four) whether McIntyre "possesses the residual functional capacity to perform her past relevant work." Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996). According "significant weight to the opinions of the consultative examining doctors," J.A. 18, and discounting McIntyre's testimony as "not credible" on the subject, J.A. 17, the ALJ found that McIntyre has the residual functional capacity to perform less than a full range of sedentary work, as defined in 20 C.F.R. §§

404.1567(a) and 416.967(a).  (The particulars are in the margin.[1])  The ALJ also found that, despite "moderate difficulties" with regard to social functioning and "concentration, persistence or pace," J.A. 15, McIntyre is capable of following directions, performing simple and some complex tasks (with and without supervision), maintaining concentration, attending to a routine, dealing with stress (via medication), and working with others.

At the final Step Five, the ALJ determined that jobs exist in significant numbers in the national economy that McIntyre can perform.  A hypothetical question was posed by the ALJ to James R. Newton, a vocational expert.  The question was intended to approximate the limitations suffered by McIntyre.  In response, Newton identified sedentary, unskilled jobs that McInctyre could

---

[1]    Specifically, the ALJ found that McIntyre

can lift, carry, push and/or pull up to 10 pounds occasionally but must avoid at or above shoulder lifting, carrying, pushing and/or pulling. [McIntyre] can stand and/or walk four hours in an eight-hour workday and sit four hours in an eight-hour workday but requires the option to sit/stand about every 15-30 minutes.  In addition, [McIntyre] must avoid climbing ladders, ropes and scaffolds as well as crawling but can perform other postural movements on an occasional basis.

J.A. 16.

perform.[2] Based on the vocational expert's testimony, the ALJ concluded that McIntyre was not disabled and denied her claims.

The Appeals Council denied McIntyre's request for review on January 30, 2012, rendering the ALJ's decision the final decision of the Commissioner. McIntyre timely filed a civil action for disability benefits. On May 21, 2013, the Unites States District Court for the Northern District of New York (Suddaby, J.) entered judgment on the pleadings in favor of Defendant.

This appeal followed.

**DISCUSSION**

"When deciding an appeal from a denial of disability benefits, we focus on the administrative ruling rather than the district court's opinion." Kohler v. Astrue, 546 F.3d 260, 264-65 (2d Cir. 2008) (quoting Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000)). We "conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been

---

[2] These included: "table worker," see U.S. Dep't of Labor, Dictionary of Occupational Titles ("DOT") § 739.687-182 (4th ed. rev. 1991) ; "patcher," see id. § 723.687-010 ; and "stuffer," see id. § 731.685-014. ("Stuffers" put fill into toy animals.)

applied." Id. at 265 (quoting Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000)); see also 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"A claimant is disabled and entitled to disability insurance benefits if she is unable to 'to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Cichocki v. Astrue, 729 F.3d 172, 176 (2d Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)). The Social Security Administration regulations outline the five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in

8

substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.  See Burgess v. Astrue, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

"The claimant has the general burden of proving that he or she has a disability within the meaning of the Act, and bears the burden of proving his or her case at steps one through four[.]"  Burgess, 537 F.3d at 128 (internal quotation marks and citation omitted).  At Step Five, "the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform."  Brault v. Soc. Sec. Admin., 683 F.3d 443, 445 (2d Cir. 2012).

**I**

McIntyre first argues that the residual functional capacity finding was not supported by substantial evidence because the finding at Step Four (that McIntyre has no diminution in social functioning and concentration, persistence, pace) is inconsistent with the findings at Step Two (that McIntyre's affective disorder is a "severe impairment") and Step Three (that McIntyre has moderate difficulties in those functions).

At Step Two, the ALJ concluded that McIntyre's disorder of the back and affective disorder "have more than a minimal effect on [her] ability to perform basic work functions and are therefore considered severe." J.A. 14. In deciding, at Step Three, that McIntyre's affective disorder was not a per se disabling neurological disorder under Listing 12.04 (as McIntyre claimed), the ALJ found that McIntyre has only moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, and pace. The ALJ relied on the examination notes of psychiatric consultative examiner, Dennis M. Noia, Ph.D., that McIntyre gets along with friends and family and that her attention and concentration are intact, but that she reported having difficulty sleeping.

As the Commissioner concedes, the Step Four residual functional capacity

10

finding did not explicitly include McIntyre's non-exertional functional limitations. However, Step Four findings need only "afford[] an adequate basis for meaningful judicial review, appl[y] the proper legal standards, and [be] supported by substantial evidence such that additional analysis would be unnecessary or superfluous[.]" Cichocki, 729 F.3d at 177. Here, the ALJ took account of Noia's opinion that McIntyre (1) was capable of understanding and following simple instructions, and performing some complex tasks with supervision and independently; (2) appeared capable of maintaining attention and concentration for tasks and could regularly attend to a routine and maintain a schedule; (3) appeared capable of learning new tasks, making appropriate decisions and relating to and interacting moderately with others; and (4) could deal with stress with the help of medication. The ALJ further relied on McIntyre's testimony that the medication she takes for depression (with no side effects) relieves her symptoms.

Based on a thorough examination of the evidence of McIntyre's relevant limitations and restrictions, the ALJ concluded that McIntyre's impairments did not preclude her from light work, subject to specified modifications. Contrary to McIntyre's assertion, an ALJ's decision is not necessarily internally inconsistent

11

when an impairment found to be severe is ultimately found not disabling: the standard for a finding of severity under Step Two of the sequential analysis is <u>de minimis</u> and is intended only to screen out the very weakest cases. <u>Dixon v. Shalala</u>, 54 F.3d 1019, 1030 (2d Cir. 1995). Here, the ALJ applied the proper legal standards and relied on substantial evidence. Accordingly, there was no error at Step Four.

**II**

McIntyre argues that the ALJ's conclusion is not supported by substantial evidence because the hypothetical question posed to the vocational expert omitted McIntyre's moderate limitations in maintaining concentration, persistence, and pace--limitations found to have been caused by McIntyre's mental impairments.

At Step Five, the Commissioner must determine that significant numbers of jobs exist in the national economy that the claimant can perform. <u>See</u> 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). An ALJ may make this determination either by applying the Medical Vocational Guidelines or by adducing testimony of a vocational expert. An ALJ may rely on a vocational expert's testimony regarding

a hypothetical as long as "there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion," see Dumas v. Schweiker, 712 F.2d 1545, 1553-54 (2d Cir. 1983), and accurately reflect the limitations and capabilities of the claimant involved, see Aubeuf v. Schweiker, 649 F.2d 107, 114 (2d Cir. 1981).

The hypothetical presented to the vocational expert, James R. Newton, closely tracked the ALJ's residual functional capacity assessment made at Step Four of the analysis, which, as the Commissioner concedes, failed to mention explicitly McIntyre's non-exertional limitations. The hypothetical added, however, a limitation to "simple, routine, low stress tasks."[3] Tr. of Hrg., June 4, 2010, at 26.

---

[3] The ALJ's entire hypothetical to the vocational expert was as follows:

> I want you to assume a hypothetical individual the claimant's age, education and past work experience. Assume further this individual can . . . lift, carry, push, pull up to 10 pounds[;] pull[,]stand[,] walk, about four hours in an eight[-]hour work day[;] sit about four hours in an eight[-]hour work day but need[s] the option to sit or stand about every 15 to 30 minutes[;] [and must] avoid climbing ladders, ropes and scaffolds, crawling but can perform other postural movements occasionally, limited to simple, routine, low stress tasks.

Tr. of Hrg., June 4, 2010, at 26.

We have not specifically decided whether an ALJ's hypothetical question to a vocational expert must account for limitations in concentration, persistence, and pace. But our case law is plain that "the combined effect of a claimant's impairments must be considered in determining disability; the [Commissioner] must evaluate their combined impact on a claimant's ability to work, regardless of whether every impairment is severe." Dixon, 54 F.3d at 1031. Accordingly, an ALJ's hypothetical should explicitly incorporate any limitations in concentration, persistence, and pace.

We hold, however, that an ALJ's failure to incorporate non-exertional limitations in a hypothetical (that is otherwise supported by evidence in the record) is harmless error if (1) "medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace," and the challenged hypothetical is limited "to include only unskilled work"; or (2) the hypothetical "otherwise implicitly account[ed] for a claimant's limitations in concentration, persistence, and pace[.]" Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011) (collecting cases).

Here, substantial evidence in the record demonstrates that McIntyre can engage in "simple, routine, low stress tasks," notwithstanding her physical limitations and her limitations in concentration, persistence, and pace. By explicitly limiting the hypothetical to such tasks (after fully explaining McIntyre's physical restrictions), the ALJ sufficiently accounted for "the combined effect of [McIntyre's] impairments." Dixon, 54 F.3d at 1031. The ALJ's error therefore was harmless.

**III**

Finally, McIntyre challenges the ALJ's reliance on the vocational expert's testimony that there is a sufficient number of sedentary jobs that can be performed by a person who (as the ALJ found McIntyre to be) needs to change from a sitting position to a standing position, and back, at 15-30 minute intervals. As McIntyre points out, "sedentary work" is generally defined as work in a sitting position for six hours of an eight-hour workday. See SSR 96-9p, 61 Fed. Reg. 34478, 34480 (July 2, 1996). However, the category of sedentary jobs is large, and the general definition allows of exceptions. Accordingly, "[i]n more complex cases" a vocational expert may be consulted to determine whether there

15

is other work in the national economy that an individual with the ability to do less than the full range of sedentary work may perform. Id. at 34483; cf. Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995) ("The DOT itself states that it is not comprehensive . . . . DOT users demanding specific job requirements should supplement this data with local information detailing jobs within their community.") (citing DOT at xiii).

As we have previously held, a vocational expert is not required to identify with specificity the figures or sources supporting his conclusion, at least where he identified the sources generally. See Brault, 683 F.3d at 450. In the circumstances presented here, we conclude that the vocational expert was not required to articulate a more specific basis for his opinion, and the ALJ reasonably credited this testimony, which was given on the basis of the expert's professional experience and clinical judgment, and which was not undermined by any evidence in the record.

## CONCLUSION

We therefore conclude, on the basis of the whole record, that the ALJ's finding of no disability is supported by substantial evidence.

16